ROBERT EUGENE ANDERSON *v.* STATE OF INDIANA

[No. 3-178A12. Filed September 28, 1978.]

*Harriette Bailey Conn*, [*Mrs.*], Public Defender of Indiana, *David P. Freund, Bobby Jay Small*, Deputy Public Defenders, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

STATON, J. — A jury found Robert Eugene Anderson guilty of two counts of Assault and Battery with Intent to Kill. He was then sentenced to the Indiana Department of Corrections for two concurrent periods of not less than two (2) nor more than fourteen (14) years. In his appeal to this Court, Anderson raises the following issues:

(1)  Was the jury's conclusion that Anderson was not too intoxicated to form the specific intent to kill supported by sufficient evidence?

(2)  Was the evidence sufficient to support the conclusion of the jury that Anderson was sane at the time he committed the offense?

We affirm.

I.

Intoxication

Anderson challenges the sufficiency of the evidence to support the jury's conclusion that he was capable of forming the specific intent to kill Gladys Hall and Jacqueline Lamb when he attacked them with a knife in their residence on October 30, 1976. Anderson maintains that at the time of the stabbings, he was too intoxicated to be capable of entertaining the specific intent to kill. The trial record reveals that the defendant had spent the three hours prior to the attack drinking beer at a local tavern.

Voluntary intoxication is a defense to a crime involving specific intent only when the intoxication renders the defendant incapable of forming the specific intent necessary to commit the crime charged. *Patterson v. State* (1978), 267 Ind. 515, 371 N.E.2d 1309, 1311. Accordingly, it is the degree of intoxication which determines the validity of the tendered defense. *Mattingly v. State* (1957), 236 Ind. 632, 636, 142 N.E.2d 607, 609. The degree of intoxication is a question of fact to be decided by the jury. *Patterson, supra.*

When the sufficiency of the evidence is raised as an issue on appeal,

this Court will not weigh the evidence nor judge the credibility of witnesses. Rather, we will examine only the evidence most favorable to the State, together with the reasonable inferences to be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the jury's decision, the conviction will not be set aside. *Id.*

Without question the evidence indicates that Anderson was, to a certain degree, intoxicated at the time he stabbed Hall and Lamb. However, there is substantial evidence of probative value to support the jury's conclusion that Anderson was not so inebriated that he was incapable of forming the specific intent to kill.

That evidence includes the testimony of the victim Jacqueline Lamb, who stated that Anderson smelled only moderately of alcohol, was "very" steady on his feet, and "seemed to have presence of mind." A signed statement which Anderson gave to the police revealed that while he was drinking at the bar, Anderson remembered the address of the victims and went there "to rob them and rape them." Defendant testified that he had no trouble operating his car en route from the tavern to his own apartment nearby the residence of the victims. According to the signed statement, Anderson cut the phone lines outside the victims' house and gained entry to the back porch by cutting a screen on the back door. This evidence indicates that Anderson was in control of his mental and physical faculties at the time he attacked Hall and Lamb.

The conclusion that Anderson was not so intoxicated that he was incapable of entertaining the specific intent to kill is further buttressed by the testimony of police officers Thomas Balyeat and Charles Lambdin, who observed the defendant when he was taken into custody almost immediately after the stabbings. Balyeat testified that the defendant smelled only moderately of alcohol, while Lambdin[1] stated that the defendant walked in a steady fashion and did not slur his speech.

---

1. Because Lambdin arrested the defendant for Public Intoxication, Anderson contends that Lambdin's testimony concerning the extent of his intoxication should be excluded from our sufficiency review as "inherently improbable." *Penn v. State* (1957), 237 Ind. 374, 146 N.E.2d 240. We do not decide that question. With or without Lambdin's testimony, the evidence is sufficient to support the jury's conclusion.

## II.

### Insanity

Anderson also contends that the evidence was insufficient to support the jury's conclusion that he was sane at the time of the stabbings. Anderson maintains that his "chronic alcoholism" rendered him unable to appreciate the wrongfulness of his acts or to conform his conduct to the requirements of the law.

The heavy use of alcohol over an extended period of time can be a valid basis for an insanity defense. *Feller v. State* (1976), 264 Ind. 541, 543, 348 N.E.2d 8, 12. However, a finding of insanity is not compelled merely because a particular defendant who asserts that defense has a history of prolonged and heavy use of alcohol. *Id.* Rather, the trier of fact must determine whether a defendant's extensive abuse of alcohol and consequent mental degeneration has in fact resulted in insanity. *Id.*

When the sufficiency of the evidence supporting the trier of fact's conclusion that the defendant was sane is raised as an issue on appeal, this Court will employ the same standard of review that is applied to other questions of fact. *Sceifers v. State* (1978), 267 Ind. 687, 373 N.E.2d 131, 136. We enunciated that standard in our analysis of the intoxication issue.

The evidence reveals that three of the four medical experts who examined Anderson testified that they believed the defendant did have the capacity at the time of the stabbings to appreciate the wrongfulness of his acts and to conform his conduct to the requirements of the law.[2] The defendant's conduct at the scene of the crime also indicates that he understood the wrongfulness of his acts. Anderson severed the phone

---

2. Anderson contends on appeal that the testimony of Doctors Hogle and Yuhn should be excluded from our sufficiency review on the basis that neither witness unequivocally recognized chronic alcoholism as a mental disease. Anderson waived his right to object to the inclusion of Hogle and Yuhn's testimony by his failure to raise the issue in the trial court. *Langley v. State* (1971), 256 Ind. 199, 206, 267 N.E.2d 538, 542. Anderson also maintains that the testimony of Dr. Bigler should be accorded little or no probative value on the grounds that Bigler, as a general practitioner, lacks expertise in the field of psychiatry. The law is well settled that physicians may testify as experts on the question of the defendant's sanity. *Tyler v. State* (1968), 250 Ind. 419, 423, 236 N.E.2d 815, 817.

lines before entering the residence and fled the premises when he was informed that the police had been notified of his actions and would soon arrive at the scene. In addition, Anderson's contention that he was afflicted with "chronic alcoholism" was undermined by the testimony of his mother, who stated that she had only seen the defendant drink on two or three occasions.

This evidence was sufficient to support the conclusion of the jury that Anderson was sane beyond a reasonable doubt at the time he stabbed Hall and Lamb.

Affirmed.

Hoffman, J., concurs;

Chipman, J. (by designation), concurs.

NOTE—Reported at 380 N.E.2d 606.