**Fairfax Henry GREEN, a/k/a Henry Fairfax Green, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 782S284.

Supreme Court of Indiana.

July 14, 1983.

Ricardo B. Casas, East Chicago, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Burglary, Ind.Code § 35–43–2–1 (Burns 1979), and was sentenced to fourteen (14) years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court erred in allowing the State to interrogate Defendant concerning his criminal history.

(2) Whether the trial court erred in refusing Defendant's tendered instructions and in giving its own instruction upon accessory liability.

(3) Whether the evidence was sufficient to sustain the conviction.

(4) Whether the sentence imposed constitutes a manifest abuse of discretion.

\* \* \*

## ISSUE I

■ Defendant first contends that the trial court erred in overruling his objections to questions, the answers to which revealed that he was on parole for Distribution of Heroin, a federal conviction, and that he had been convicted of Assault and Battery with intent to Kill in 1964. He maintains that he had not placed his character in issue and that neither of these convictions was admissible for purposes of impeachment. *Gilliam v. State,* (1978) 270 Ind. 71, 76, 383 N.E.2d 297, 301; *Fultz v. State,* (1982) Ind. App., 439 N.E.2d 659, 662 (trans. denied).

On direct examination, Defendant had testified that he was on parole:

"Q. Now, did you not tell the officers that the keys were lost because Mr. Bailey and Miss Johnson had been arguing?
"A. Yes, I was trying to tell the officer that, but he kept telling us to shut up.
"Q. And why did you in fact tell that to the officers?
"A. Well, I was scared. I knew we were out in Hessville and Hammond. I realized where we were, and I just didn't want any trouble with the police. I really had panicked. I got scared because I was on parole." R. at 307.

He had also indirectly referred to his prior arrest:

"Q. Would you tell the jury here why you did not give this statement a day earlier?
"A. Okay, this is—that wasn't my first time being arrested, and I understand that it's best not to make a statement because the police have a way of misconstruing things and writing them up different types of ways." R. at 309–10.

Thus, the State responds that Defendant "opened the door" to inquiry about his criminal history.

In *Gilliam v. State, supra,* Justice DeBruler explained the policy behind the "open door" rule:

"While an uncritical acceptance of the wording employed in cases under this rule would support the State's position, we believe that there is a further, often unstated requirement implicit in those cases: the evidence relied upon to 'open the door' must leave the trier of fact with a false or misleading impression of the facts related."

There was nothing deceptive about Defendant's disclosures in this case. His reference to being on parole explained why he had attempted to tell the police officer about lost car keys at the time of his arrest. The specific reason for his parole could not have been enlightening to the jury upon this matter and therefore was not relevant. Similarly, his indirect reference to having been arrested in the past explained why he gave a statement to the police at the time that he did. The exact nature of the prior arrest was also unenlightening to the jury upon this issue and was, therefore, irrelevant. We have not found, and the State has not cited, any authority for the proposition that an accused's tangential reference or aside to his criminal history, as occurred here, allows the Prosecution to explore the details of that criminal history regardless of how irrelevant such details may be to the context in which the history was revealed. As this evidence of Defendant's criminal history was not otherwise relevant or admissible, the trial court erred in overruling Defendant's objections to its admission. However, from our review of the evidence, Issue III, infra, we have determined that this error could not have contributed to the verdict. Defendant's volunteered testimony had already revealed the existence of a criminal record. This general disclosure had raised the potential for the prejudice complained of wholly apart from the State's cross-examination, which delved into specifics. *See Emerson v. State,* (1974) 261 Ind. 436, 442–43, 305 N.E.2d 435, 439–40.

## ISSUE II

■ Defendant next contends that the trial court erred in giving final instruction No. 5:

"The presence of the defendant at the time and place of the crime alleged to have been committed by the defendant's companions would not of itself render the defendant guilty under this accessory principle of law. But presence of a person at the scene of the commission of a charged crime and companionship with another person engaged in the offense and a course of conduct before and after the offense are circumstances which may be considered in determining whether such person aided and abetted the commission of such crime.

"If in the commission of an offense it is shown by the evidence beyond a reasonable doubt that the persons present acted in union, any act of one person is attributable to all persons and a person is responsible for the acts of his companions as well as his own. Under these circumstances it is not essential that actual participation of each of the defendants in each element of the charge be established."

He also contends that the court erred in refusing his tendered instructions Nos. 4 and 6:

"One must look for affirmative conduct via words or acts which leads to reasonable inferences of a Common Design of Purpose to effect the commission of a crime. It is not sufficient to render one party to a crime that he merely acquiesces in its commission in the absence of any duty owed to the victim of the crime to prevent its commission."

"Mere suspicion that the Defendant was aware of a criminal design is not enough to infer that the Defendants knew of a criminal design."

The State responds that Defendant did not state a ground for objection to final instruction No. 5. The record reveals only a naked objection to the instruction; consequently, Defendant has presented nothing for review in this regard. *Patterson v. State,* (1978) 267 Ind. 515, 518, 371 N.E.2d 1309, 1311; *Lund v. State,* (1976) 264 Ind. 428, 434–35, 345 N.E.2d 826, 830.

Final instruction No. 5 embodied an accurate statement of the law, *Fortson v. State,* (1979) 270 Ind. 289, 294, 385 N.E.2d 429, 434; *Pulliam v. State,* (1976) 264 Ind. 381, 392, 345 N.E.2d 229, 238, and it adequately covered the substance of Defendant's tendered instruction No. 4. *Morris v. State,* (1979) Ind., 271 Ind. 593, 394 N.E.2d 151, 154. Additionally, final instruction No. 6:

"For any of the defendants to be accountable as an accessory, they must share a common criminal intent. In this case the evidence must have shown beyond a reasonable doubt that they all had the intent to break and enter with intent to commit a felony."

adequately covered the substance of Defendant's tendered instruction No. 6. The refusal of an instruction is not grounds for reversal if the substance thereof is covered by other instructions given by the court. *Patterson v. State, supra.*

## ISSUE III

We have reviewed Defendant's challenge to the sufficiency of the evidence in light of the erroneous admission of evidence of his prior convictions.

The undisputed evidence reveals that a home in Hammond was burglarized on the evening of February 22, 1981. Defendant testified that on that evening he had accompanied Robert Bailey and Andrewella Johnson to Hammond to pick up some things Bailey had left at a friend's home. On arrival, Bailey stated he was going to commit a Burglary, which Defendant took as a joke. After requesting that Defendant knock on the door of the premises, an act which Defendant declined to do, Bailey left the automobile. About fifteen minutes later, he returned carrying a television set, a speaker, and a pillow case, the contents of which Defendant had not seen. The loot was placed in the automobile, and while Bailey rummaged through the pillow case, the police drove by, made a u-turn, and parked at the back of the car. Defendant and Bailey exited the car, as the officer

exited his automobile, and they were arrested after one officer noticed the loot.

Bailey offered a slightly different version of the events. He testified that they had agreed enroute to commit a burglary and to split the loot three ways. Defendant was to act as lookout. On arrival, they knocked on the door to determine if anyone was at home. All three then went to the back of the house where someone, probably Defendant, broke a window with a rock or a brick. Defendant then returned to the automobile while the others gathered the loot.

■ Defendant asks us to discount the accomplice's testimony because he had initially denied being involved in the Burglary. He also asks us to consider the plea bargain obtained upon behalf of the accomplice and his extensive criminal record all of which were disclosed to the jury. Further, he notes that in his testimony, the accomplice contradicted his prior statement given to the police, wherein he had stated, in accord with the arresting officers' testimony, that the police had approached as he and Defendant were jointly carrying the television set to the car. He adds that the police officers made no note in their report either of such participation by him or of whether Johnson was holding the car door or seat as the television was being placed inside.

> "Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." *Loyd v. State,* (1980) Ind., 398 N.E.2d 1260, 1264, *cert. denied,* (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. (citations omitted).

There is nothing inherently incredible about the police officers' testimony or the accomplice's testimony. *Thomas v. State,* (1982) Ind., 436 N.E.2d 1109, 1111; *Bentley v. State,* (1981) Ind., 414 N.E.2d 573, 574. In addition to the directly inculpating testimo-

ny of the accomplice, the police officers arrested Defendant while he was exercising control over property that had been just stolen in a burglary. Other evidence reveals that Defendant did not offer his explanation of the circumstances until after Johnson and Bailey had implicated him, although he had denied having any connection with the break-in. The jury was not obligated to believe his explanation. He further admitted that he had discussed the possibility of turning State's evidence with co-defendant Johnson. This additional evidence cast considerable doubt upon the credibility of his testimony, more so we believe than did the revelation of the details of his criminal history following his general disclosure that he had a criminal history. The evidence was not only sufficient to sustain the conviction but also of such probative value as to render it unlikely that the erroneously admitted particularized evidence of Defendant's criminal history contributed to the verdict. *See Emerson v. State, supra.*

### ISSUE IV

■ Defendant acknowledges our standard of review for determining the reasonableness of a sentence. Ind.R.App.Rev.Sen. 2(1). Nevertheless, his argument, by focusing upon the assertedly dangerous nature, lengthy record, and shorter sentence of his co-defendant Bailey, ignores the language of the rule. There has been no showing that Bailey's obtaining an extremely advantageous plea bargain under the circumstances, was relevant to Defendant's character or his degree of participation in the offense. Defendant admits that he has a criminal record and that he was on parole from a federal sentence at the time he committed the instant offense. These are valid aggravating circumstances which support the imposition of an enhanced sentence. *Forrester v. State,* (1982) Ind., 440 N.E.2d 475, 487–88; *Evans v. State,* (1979) Ind.App., 393 N.E.2d 246, 250–51. The record does not demonstrate that the trial court abused its discretion in sentencing Defendant.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER and HUNTER, JJ., concur.

PIVARNIK, J., concurs in result.